J-S13019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :   PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| EDITH TOMASA RODRIGUEZ | : |
| CARDENAS | : |
| | : No. 2309 EDA 2025 |
| Appellant | : |

Appeal from the PCRA Order Entered August 1, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0002765-2021

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 28, 2026**

Appellant Edith Tomasa Rodriguez Cardenas appeals from the order dismissing her Post-Conviction Relief Act (PCRA)[1] petition and denying her petition for leave to file a second amended PCRA petition.  After review, we reverse and remand for further proceedings consistent with this memorandum.

A previous panel of this Court set forth the facts and procedural history of this case as follows:

> On January 29, 2021, Appellant was the passenger in a white Jeep Wrangler driven by Christian Ochoa ("Ochoa").  At approximately 11:30 PM, Bedminster Township Police Officer James Zukow and Dublin Borough Police Officer Nicholas Swinehart were parked in separate patrol vehicles monitoring traffic on PA Route 313 exiting Dublin Borough into Bedminster Township, when they observed Ochoa's Jeep traveling westbound on Route 313.  Officer Zukow

_____

[1] 42 Pa.C.S. §§ 9541-9546.

began to follow Ochoa and Officer Swinehart followed Officer Zukow. Officer Zukow observed the Jeep's speed repeatedly fluctuate from the posted speed limit of 55 MPH to approximately 40 MPH. Officer Zukow further observed the driver side tires of the Jeep pass onto or over the middle yellow lines of the road on several occasions. He also observed the passenger side tires pass over the white fog lines on several occasions, including when the Jeep encountered oncoming traffic.

After following the Jeep for approximately one to two miles, Officer Zukow activated his overhead lights and sirens and pulled Ochoa over for suspicion of driving under the influence. He exited his patrol vehicle and approached the passenger side of the Jeep. Officer Swinehart also stopped his vehicle, exited, and approached the driver's side of the Jeep. Officer Swinehart requested Ochoa's driver's license; Ochoa complied and informed Officer Swinehart that he was traveling from Texas and had just picked up Appellant. Officer Swinehart then gave Ochoa's driver's license to Officer Zukow, who maintained possession of it for the duration of the traffic stop.

Officer Zukow then approached Ochoa, who was still seated in the Jeep. Officer Zukow had difficulty hearing Ochoa because his speech was slow and almost slurred and observed that Ochoa's eyes appeared "droopy." Officer Zukow suspected that Ochoa was impaired and, therefore, requested that Ochoa perform field sobriety tests. Ochoa was cooperative and passed two separate field sobriety tests. Officer Zukow informed Ochoa that he had passed the tests.

Officer Zukow then asked Ochoa if he had any illegal substances in the Jeep and Ochoa responded that he did not. Officer Zukow asked Ochoa for his consent to search the Jeep. Ochoa then consented, both orally and by signing a "Consent to Search" form. Ochoa did not ask Officer Zukow any questions about the Consent to Search form or indicate at any time that he did not understand what was going on. Officer Swinehart witnessed Ochoa's consenting to the search. Neither Officer Zukow nor Officer Swinehart requested Appellant's consent to search the vehicle.

After Ochoa consented to the search, Officer Zukow approached Appellant, who was still seated in the front passenger seat of the Jeep and advised her that he was going to search the Jeep. Appellant confirmed to Officer Zukow that she understood that he was going to conduct a search by saying "okay" and stepped out

- 2 -

of the Jeep. Appellant asked Officer Zukow if she could take her purse with her and Officer Zukow answered "whatever." Appellant chose to leave her purse in the Jeep. Officer Zukow told Appellant and Ochoa that they were not under arrest.

Because it was a very cold night, Officer Zukow offered Appellant and Ochoa the opportunity to wait in Officer Swinehart's patrol vehicle during the search, and Appellant and Ochoa accepted. The officers did not notify Appellant that she was free to leave.

Officer Swinehart escorted Appellant and Ochoa to his patrol car and patted them down for weapons before they entered the back seat of the car. Officer Swinehart remained just outside the vehicle in case Appellant or Ochoa decided to object to the search, had any questions, or needed anything. The back doors of Officer Swinehart's vehicle were locked while Appellant and Ochoa sat in the back seat because they lock automatically. Officers retained Ochoa's driver's license for the duration of the traffic stop.

Appellant and Ochoa remained in Officer Swinehart's vehicle for approximately 30 minutes, with the windows closed, while Officer Zukow and other officers who had arrived on the scene, searched the Jeep. During the search the officers discovered suspected controlled substances. Specifically, they discovered Appellant's purse on the front passenger seat containing marijuana and a written list of expenses; a backpack in the back seat containing 7,724 grams of Fentanyl, 983 grams of heroin, and 1001 grams of cocaine; a second backpack containing 25.96 grams of methamphetamine and 66 Alprazolam pills; a digital scale, $9,698 cash; four phones; and large hardtop red suitcase with Greyhound bus tags on it.

Following the search, Officer Zukow arrested Appellant and Ochoa and the Commonwealth charged them with numerous drug offenses. The police subsequently obtained search warrants for and executed searches of cell phones belonging to Ochoa and Appellant. Evidence obtained from the search of Appellant's cell phone indicated that she was involved with a drug trafficking organization.

On September 30, 2021, Appellant filed a motion to suppress the evidence seized following the search of the Jeep. Appellant alleged that the police lacked reasonable suspicion or probable cause to stop the Jeep in the first instance, and that, therefore, any detention, search, and seizure of physical evidence were tainted by the illegality of the initial stop.

On November 9, 2021, the trial court held a hearing on Appellant's motion to suppress at which Officers Zukow and Swinehart provided testimony consistent with the above facts.

On January 24, 2022, the trial court denied Appellant's motion to suppress.

\* \* \*

Following its consideration of the evidence, the court convicted Appellant of the above charges. That same day, the trial court sentenced Appellant to an aggregate term of 8 to 16 years of incarceration. Appellant filed a post-sentence motion challenging the sufficiency of the evidence in support of each of her convictions. After holding a hearing, on May 26, 2022, the trial court denied Appellant's post-sentence motion.

*See Commonwealth v. Rodriguez-Cardenas*, 1731 EDA 2022, 2023 WL 5345381, at *2-8 (Pa. Super. filed Aug. 21, 2023) (unpublished mem.) (citations and footnotes omitted).

Appellant filed a timely direct appeal and this Court affirmed Appellant's judgment of sentence on August 21, 2023. *See id.* Appellant did not seek review with our Supreme Court.

On April 29, 2024, Appellant filed a *pro se* PCRA petition. On May 10, 2024, the trial court appointed Christa S. Dunleavy, Esquire (Attorney Dunleavy) to represent Appellant.[2] On August 23, 2024, Attorney Dunleavy

_____

[2] We note that on January 27, 2026, Attorney David A. Gastfriend of the Bucks County Public Defender's Office entered his appearance on behalf of Appellant. The Bucks County Public Defender's Office represented Appellant throughout her PCRA proceedings. Because we explain that Attorney Dunleavy may not argue her own ineffectiveness, we necessarily concluded that Attorney Gastfriend may not argue Attorney Dunleavy's ineffectiveness because they are members of the same public defender's office. *See Commonwealth v. Ciptak,* 665 A.2d 1161, 1161–62 (1995) (stating that "[a]s a general rule, a

*(Footnote Continued Next Page)*

- 4 -

filed an amended PCRA petition. On November 1, 2024, a PCRA hearing was held. On April 9, 2025, the trial court issued a notice, pursuant to Pa.R.Crim.P. 907, of its intent to dismiss Appellant's PCRA petition. On April 29, 2025, Attorney Dunleavy filed a petition for leave to file a second amended PCRA petition, and the second amended PCRA petition. On August 1, 2025, the trial court denied Appellant's petition for leave and dismissed Appellant's PCRA petition.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues:

1. Whether the [PCRA] court erred in holding that Appellant failed to raise and preserve a challenge to the legality of the detention?

2. Whether the [PCRA] court erred in refusing to allow Appellant to file an amended [PCRA] petition?

3. Whether the trial court erred in dismissing the [PCRA] petition where trial counsel was ineffective for failing to raise and preserve the issue of whether the consent to search the vehicle and its contents was coerced by an illegal detention.

Appellant's Brief at 11 (some formatting altered).

Before addressing the merits of Appellant's claims, we must address whether Appellant was deprived of her right to counsel. *See Commonwealth*

_____

public defender may not argue the ineffectiveness of another member of the same public defender's office since appellate counsel, in essence, is deemed to have asserted a claim of his or her own ineffectiveness").

*v. Stossel,* 17 A.3d 1286, 1288-90 (Pa. Super. 2011) (stating that "where an indigent, first-time PCRA petitioner was denied his right to counsel—or failed to properly waive that right—this Court is required to raise this error *sua sponte* and remand for the PCRA court to correct that mistake").

It is axiomatic that an indigent person is entitled to the appointment of counsel for proceedings on their first PCRA petition. **See Commonwealth v. Albert**, 561 A.2d 736, 738 (Pa. 1989). "In this context, the right to counsel conferred on initial PCRA review means an enforceable right to the effective assistance of counsel." **Commonwealth v. Betts**, 240 A.3d 616, 621 (Pa. Super. 2020) (citations and internal quotation marks omitted). This right extends throughout the entirety of a petitioner's first PCRA hearing. **Id.** at 623.

> Once a PCRA petitioner makes timely allegations of ineffective assistance of PCRA counsel, a "substantial and irreconcilable" conflict with counsel is created. Once the conflict is created, PCRA counsel is "faced with the impossible choices of: (1) taking no action, or rejecting Appellant's assertions of ineffectiveness, thereby narrowing Appellant's available claims for relief and opposing his client's interests; or (2) confirming Appellant's assertions and assisting Appellant in pursuing them while he still represent[s]Appellant." However, counsel is unable to proceed with either option without violating Pennsylvania law.

**Commonwealth v. Alston**, 912 WDA 2025, 2026 WL 1334956 at *3 (Pa. Super filed May 13, 2026) (unpublished mem.) (quoting **Commonwealth v. Betts**, 240 A.3d 616, 623-24 (Pa. Super. 2020)).

Our Supreme Court in **Commonwealth v. Bradley**, held that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new

counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Commonwealth v. Bradley**, 261 A.3d 381, 401 (Pa. 2021). Additionally, in **Commonwealth v. Greer**, our Supreme Court held that "when faced with a clear indication that [the petitioner] wished to pursue claims of [PCRA counsel's] ineffectiveness, [the Superior Court] should have immediately remanded the case to the PCRA court for an on-the-record assessment of [the petitioner's] rights and wishes." **Commonwealth v. Greer**, 316 A.3d 626, 628-29 (Pa. 2024).

Furthermore, the **Greer** court stated "it is well-established that when a counseled appellant seeks to proceed *pro se* on appeal, the proper response is to remand to the lower court for an on-the-record [**Grazier**[3]] hearing to determine whether the waiver of counsel is knowing, intelligent, and voluntary." **Id.** at 629. When the record reflects that a petitioner may wish to include claims of PCRA counsel ineffectiveness, this Court should remand for a **Grazier** hearing to determine petitioner's wishes. **Id.** Lastly, our Supreme Court has made it clear that "counsel cannot argue his or her own ineffectiveness." **See Commonwealth v. Spotz**, 18 A.3d 244, 329 n.52 (Pa. 2011). "[U]nder no . . . circumstances are counsel and client permitted to present opposing arguments." **Commonwealth v. Ellis**, 626 A.2d 1137, 1138-39 (Pa. 1993).

_____

[3] **See Commonwealth v. Grazier**, 713 A.2d 81, 82 (Pa. 1998).

- 7 -

Here, Appellant filed a *pro se* PCRA petition, wherein Appellant alleged a single claim of ineffective assistance of counsel based on trial counsel's failure to preserve her argument regarding the legality of her detention. **See** *Pro Se* PCRA Petition, 4/29/24, at 2-3. After Appellant filed this petition, the trial court appointed Attorney Dunleavy to represent Appellant for her first PCRA proceedings. On August 23, 2024, Attorney Dunleavy filed an amended PCRA petition on behalf of Appellant. In the amended PCRA petition, Appellant claims that "trial counsel was ineffective in failing to raise and preserve whether the consent to search the vehicle and its contents was coerced by an illegal detention." **See** PCRA Petition, 8/23/24 at 4 (unpaginated). This petition did contain the claim raised in the *pro se* PCRA petition. On April 10, 2025, the PCRA court issued a Rule 907 notice stating that counsel failed to preserve the illegal detention claim. **See** Rule 907 Notice, 4/10/25, at 20.

On April 29, 2025, Attorney Dunleavy filed a motion for leave to file a second amended PCRA petition and a second amended PCRA petition that included the illegal detention claim she previously omitted in error. **See** Second Amended PCRA Petition, 4/29/25; **see also** Petition for Leave to File Second Amended PCRA Petition, 4/29/25. In the petition for leave to file a second amended PCRA petition, Attorney Dunleavy explicitly stated: "[I]t is clear that undersigned counsel[, Attorney Dunleavy,] was ineffective in failing to properly and effectively raise all potential issue[s] in an Amended [PCRA Petition]." **See** Petition for Leave to File Second Amended PCRA Petition, 4/29/25, at 4.

Additionally, in a response, the Commonwealth acknowledges that Attorney Dunleavy raised her own ineffective assistance of counsel claim, which she is barred from doing under Pennsylvania law and which created a conflict of interest. **See** Commonwealth's Response to Petition for Leave, 7/14/25, at 1. The Commonwealth also contends that

> if [Appellant] insists that present counsel's ineffectiveness prevented her from preserving these issues, the law and the interests of justice require that [Appellant] be appointed new counsel to represent her in these proceedings and that new counsel be permitted to file an amended petition raising non-waived layered claims of ineffective assistance of counsel.

**Id.** at 2.

Accordingly, the record reflects that Appellant wished to raise claims of PCRA counsel's ineffective assistance.[4] Despite Attorney Dunleavy and the Commonwealth highlighting that Attorney Dunleavy raised her own ineffective assistance of counsel claim, the PCRA court denied the motion for leave to file a second amended PCRA and dismissed Appellant's PCRA petition. There is no indication in the record that Appellant wished to proceed with Attorney Dunleavy following her assertion of her own ineffective assistance. However, once a claim of ineffective assistance was raised a conflict was created between Appellant and Attorney Dunleavy. **See Alston**, 2026 WL 1334956

---

[4] We acknowledge that Appellant's PCRA counsel, rather than Appellant, raised her own ineffective assistance claim. However, we believe in this context it does not matter who raised the claim as the raising of PCRA counsel's ineffective assistance created a conflict between Attorney Dunleavy and Appellant. **See Greer**, 316 A.3d at 628-29.

- 9 -

at *3. The PCRA court's failure to address the claim of ineffective assistance forced Attorney Dunleavy to either ignore her claim of ineffective assistance of counsel and continue to litigate the appeal or attempted to litigate her own ineffective assistance, which is impermissible under Pennsylvania law. **See Spotz**, 18 A.3d at 329 n.52.

Accordingly, pursuant to **Greer**, we must remand the case to the PCRA court for a **Grazier** hearing to determine Appellant's intentions and rights on appeal. **See Greer**, 316 A.3d at 628-29. At the hearing, the PCRA court shall advise Appellant that she has three potential options: 1) continue to litigate her appeal with Current PCRA Counsel, Attorney Dunleavy, representing her; 2) proceed on appeal with newly appointed counsel; or 3) proceed *pro se* on appeal. The PCRA court shall address the ramifications of each avenue with Appellant.

Specifically, if Appellant wishes to proceed with Current PCRA Counsel, she shall be advised that Current PCRA Counsel cannot litigate claims of her own ineffective assistance on appeal and, therefore, Appellant will waive review of those claims. If Appellant wishes to proceed with new PCRA counsel, the PCRA court shall appoint new PCRA counsel for Appellant, and Appellant shall be advised that new counsel, after reviewing Appellant's claims of Current PCRA Counsel's ineffective assistance, may decline to raise them

based upon new counsel's professional judgment.[5]   If Appellant wishes to proceed *pro se*, the PCRA court shall ensure that Appellant is aware of all of the relevant information required by Pa.R.Crim.P. 121(a)(2) and **Grazier**. Finally, should Appellant decide to proceed with Current PCRA Counsel, the PCRA court shall reinstate its order denying Appellant's PCRA petition and Current PCRA Counsel shall continue to represent Appellant on appeal. However, should Appellant decide to proceed *pro se* or with new PCRA counsel, Appellant shall be provided with the opportunity to amend her PCRA petition, limited to the claims of PCRA Counsel's ineffective assistance.  The PCRA court shall review those claims, as presented by new PCRA counsel or by Appellant *pro se*, and decide those claims on the merits.  If the PCRA court denies those claims, Appellant is entitled to appeal her claims of Current PCRA Counsel's ineffective assistance as well as any other claims previously presented to the PCRA court and preserved for our review.[6]

Order vacated.  Case remanded with instructions.  Jurisdiction relinquished.

_____

[5] We take no position on the merits of Appellant's claims and note that "[an] appellant's entitlement to effective assistance [of counsel during the litigation of his first PCRA] is not predicated upon the existence of meritorious issues." **See Betts**, 240 A.3d at 624 n.13.

[6] When complying with Rule 1925(a), the PCRA court may rely on its previous Rule 1925(a) opinion to the extent it addresses the issues that Appellant has already raised for our review.  After the **Grazier** hearing, should Appellant proceed *pro se*, or with new PCRA counsel who may decide to amend her PCRA petition, those amendments are limited to the claims of Current PCRA Counsel's ineffective assistance.  If need be, the PCRA court may address those claims in a supplemental 1925(a) opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/28/2026